UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CORTEZ BROWN, | |
| Plaintiff, | |
| v. | Case No. 21-cv-138-JPG |
| RICHARD WATSON, TRINITY SERVICE GROUP, DR. DAVID MARCOWITZ, | |
| Defendants. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a motion to dismiss filed by defendant Dr. David Marcowitz, the medical director of the St. Clair County Jail ("Jail"), pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim (Doc. 101). Plaintiff Cortez Brown has responded to the motion (Doc. 114), and Dr. Marcowitz has replied to that response (Doc. 117).

**I.      Background**

Brown filed this civil rights action *pro se* pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred during his detention at the Jail. He alleges that defendant St. Clair County Sheriff Richard Watson and Trinity Service Group were responsible for unhealthy and unsafe conditions of confinement in the Jail during the COVID-19 pandemic (Counts 1 and 2).

Brown also alleges that Dr. Marcowitz behaved unreasonably and/or with deliberate indifference to his health needs because he did not take sufficient steps to prevent, diagnose, and contain the coronavirus (Count 3) and because he failed to provide Brown with adequate medical care when he contracted the disease (Count 4). He specifically points to Dr. Marcowitz's refusal to test him for COVID-19 on a number of occasions, to provide personal protective equipment

("PPE") for Jail inmates, and to test and separate actually or potentially infected inmates from others. He asserts that these failures resulted in an outbreak of 300 COVID-positive inmates and 3 inmate deaths by January 2021.

He asserts that in so acting, the defendants violated either his Fourteenth Amendment due process rights or his Eighth Amendment right to be free from cruel and unusual punishment, depending on whether he was a convicted inmate or a pretrial detainee at the time.

Dr. Marcowitz now argues that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d to 247d-10 ("PREP Act"), immunizes him from suit and from liability for Brown's claims. *See* 42 U.S.C. § 247d-6d(a)(1). Brown argues that Dr. Marcowitz is not covered by PREP Act immunity because he is alleged to have withheld COVID-19 countermeasures rather than to have deployed them.

## II.     Standards for Dismissal

Dr. Marcowitz relies on Rule 12(b)(1) and Rule 12(b)(6) as justifying dismissal of the claims against him.

Rule 12(b)(1) permits dismissal of claims for lack of subject matter jurisdiction. Where the subject matter jurisdiction challenge is based on the sufficiency of the factual allegation in the complaint, those allegations and reasonable inferences drawn from those facts are viewed in the light most favorable to the plaintiff. *Patel v. City of Chi.*, 383 F.3d 569, 572 (7th Cir. 2004). When jurisdiction is questioned, plaintiff bears the burden of proving that jurisdiction exists. *Lee v. City of Chi.*, 330 F.3d 456, 468 (7th Cir. 2003).

The purpose of a motion to dismiss filed pursuant to Rule 12(b)(6) is to decide the adequacy of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The complaint must allege enough factual information to "state a claim to relief that is plausible on

its face" and "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff need not plead detailed factual allegations, but he must provide "more than labels and conclusions, and a formulaic recitation of the elements." *Twombly*, 550 U.S. at 570. When considering a Rule 12(b)(6) motion to dismiss, the Court accepts well-pleaded facts as true and draws all reasonable inferences in favor of the plaintiff. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 879 (7th Cir. 2012).

**III.     Discussion**

    A.     <u>Facts Alleged</u>

Viewing all factual allegations and reasonable inferences in Brown's favor, the Complaint establishes the following relevant facts as to his claims against Dr. Marcowitz.

Dr. Marcowitz provided medical services to the inmates at the Jail when the COVID-19 pandemic was raging, and Brown alleges he took inadequate steps to prevent, diagnose, and contain the virus. Dr. Marcowitz refused to adequately test inmates for COVID-19. Brown also claims he provided staff, but not inmates, with PPE like masks and gloves, and he did not order that inmates arriving at the Jail be tested and separated from other inmates. Brown claims that Dr. Marcowitz's failures led to an outbreak of the disease. When Brown reported symptoms of COVID-19 to Dr. Marcowitz and requested testing for the virus, Dr. Marcowitz denied several of his requests. When Brown eventually tested positive, Dr. Marcowitz did not ensure his condition was appropriately monitored by temperature checks or treated with medication.

    B.     <u>PREP Act Immunity</u>

The Court starts with a look at the contours of PREP Act immunity. The PREP Act,

passed in 2005, provides that "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure" if the Secretary of the Department of Health and Human Services ("Secretary") declares a public health emergency, recommends those particular countermeasures, and specifically states that the PREP Act immunity is in effect with respect to those countermeasures.  42 U.S.C. § 247d-6d(a)(1) & (b)(1).  The scope of this immunity is broad in that it includes any type of physical, mental, or emotional loss or property damages that has "a causal relationship with the administration to or use by an individual of a covered countermeasure."  42 U.S.C. § 247d-6d(a)(2).  The PREP Act goes on to define "covered countermeasure," "covered person," and other terms used in the statute.  42 U.S.C. § 247d-6d(i).  The sole exception to this immunity is for an exclusively federal PREP Act cause of action for wrongful death or serious injury caused by willful misconduct.  42 U.S.C. § 247d-6d(d)(1) & (e).

On March 10, 2020, the Secretary declared a public health emergency due to the COVID-19 pandemic and recommended specific "covered countermeasures" and the conditions for their administration.  *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198, 2020 WL 1245193 (Mar. 17, 2020) (the "Declaration").  "Covered countermeasures" are "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, or any device used in the administration of any such product, and all components and constituent materials of any such product."  Declaration § 6, 85 Fed. Reg. 15198-01, 15202.  The Declaration, or a later amendment, was in place at all times relevant to this lawsuit.

Brown does not contest that Dr. Marcowitz was a "covered person" under the PREP Act and that "covered countermeasures" included the types of products and activities he accuses Dr. Marcowitz of failing to use—PPE for inmates, COVID-19 testing, and isolation or segregation of potentially or actually infected inmates.[1] Brown and Dr. Marcowitz disagree, however, about whether Brown's alleged injury was "caused by, arising out of, relating to, or resulting from *the administration to or the use by an individual*" of a covered countermeasure. 42 U.S.C. § 247d-6d(a)(1) (emphasis added). Dr. Marcowitz argues that his management of COVID-19 countermeasures at the Jail fell within the ambit of "administration" of covered countermeasures, so he is immune from lawsuits about that "administration." Brown, on the other hand, asserts exactly the opposite—that Dr. Marcowitz *did not* administer countermeasures to or use countermeasures on him at the Jail in the sense that he did not give or do anything to Brown—so PREP Act immunity does not apply. In other words, Brown's claims are premised on the *non-use* of countermeasures, not their *administration or use* as contemplated under the PREP Act.

C.   "The Administration to or the Use by an Individual"

The Courts and the Secretary often differ on what the statute means by "*the administration to or the use by an individual*" of a covered countermeasure. The Secretary announced his expansive view in the Declaration itself, which defined "administration" as "physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, *management and operation of countermeasure programs*, or management and

---

[1] As relevant for this case, it appears that COVID-19 testing and PPE fell within the definition of "covered countermeasures"; the Court is uncertain whether isolation/quarantine qualified. However, since the parties do not challenge this point, the Court proceeds as if all countermeasures at issue in this case were covered.

operation of locations for purpose of distributing and dispensing countermeasures." Declaration § IX, 85 Fed. Reg. 15198-01, 15202 (emphasis added). Thus, the Declaration envisions "administration" to include management decisions about operating systems and programs to deliver, distribute, and dispense covered countermeasures. In fact, the Fourth Amendment to the Declaration, dated December 3, 2020, expressly declared that PREP Act immunity could apply to prioritization or purposeful allocation decisions *not* to administer a covered countermeasure to an individual *if* the reason for withholding administration is so that the countermeasure may be administered to another individual. 4th Am. Declaration, 85 Fed. Reg. 79190, 79197.

On October 23, 2020, the Department of Health and Human Services ("HHS") General Counsel issued Advisory Opinion 20-04 expressing a similar view. HHS, Advisory Opinion 20-04, https://www.hhs.gov/guidance/document/advisory-opinion-20-04-public-readiness-and-emergency-preparedness-act-and-secretarys (visited Mar. 15, 2023) (Doc. 102-2). Advisory Opinion 20-04 states that the PREP Act includes as "covered persons" the supervisors and administrators of programs to implement recommended countermeasures and immunizes them for their decisions to withhold those countermeasures from certain people. *Id.* at 2. It defines "administration of covered countermeasures" to include "decisions regarding prioritization of populations to receive countermeasures while there are limited doses." *Id.* at 6. As an example, it noted that if a pharmacy decided to prioritize vaccines to one population over another based on CDC recommendations for distributing limited resources, the pharmacy that refused to give the non-priority vaccine is immune from suit by a person who did not receive a vaccine and became ill. *Id.* Furthermore, it expressly disapproved of a New York state court decision holding otherwise in the context of the H1N1 pandemic. *Id.* at 7. Thus, it is clear that under the HHS's view, someone responsible for a system of administering or using covered countermeasures that

6

fails to make use of those countermeasures as a result of an administrative decision consistent with public health guidance is still entitled to PREP Act immunity.  *See* HHS, Advisory Opinion 21-01, https://www.hhs.gov/guidance/document/advisory-opinion-21-01-public-readiness-and-emergency-preparedness-act (visited Mar. 15, 2023).

Courts, like the one cited in Advisory Opinion 20-04, have consistently taken a different view.  Most of those cases addressed the question in the context of whether the PREP Act preempted state law tort claims alleging negligent failure to act.  Those courts consistently found there was no preemption because allegations of *inaction*, as opposed to allegations of *action*, do not fall within the PREP Act's definition of "the administration of or use of a countermeasure."

For example, in *Walsh v. SSC Westchester Operating Co. LLC*, 592 F. Supp. 3d 737 (N.D. Ill. 2022), the estates of two nursing home residents who died of COVID-19 sued the nursing home for negligence because, among other things, they allegedly failed to implement any policies to mitigate the spread of COVID-19 as directed by the Center for Medicare and Medicaid Services ("CMS").  *Id.* at 738, 740.  The court noted HHS's broad interpretation of "administration" and "use" of a covered countermeasure to include decisions directly relating to systems of delivery, distribution, and dispensing countermeasures to recipients.  *Id.* at 743-44.  However, the court also observed that a growing consensus of courts across the nation have interpreted the PREP Act only to apply to protect those that *employ* countermeasures, not those that *decline* to do so.  *Id.* at 744.  After all, the court noted, "Protection against liability is meant to encourage action against the virus, specifically the production and deployment of countermeasures." *Id.*

However, the *Walsh* court noted that where a program of administering covered countermeasures resulted in deliberate allocation of limited resources to some but not others, as

7

opposed to simply not taking a covered countermeasure at all, PREP Act immunity would still have some force because the allocation decision was directly related to the action of delivery, distribution, or dispensing a countermeasure. *Id.* at 745. *See, generally, DeAngelo v. Artis Senior Living of Elmhurst, LLC*, No. 22 C 02538, 2022 WL 3357276 (N.D. Ill. Aug. 15, 2022) (finding defendant who utterly failed to undertake countermeasures not within PREP Act, noting consensus that Act does not cover claims based on a failure to deploy countermeasures).

In *Martin v. Petersen Health Operations, LLC*, 37 F.4th 1210 (7th Cir. 2022), the Court of Appeals for the Seventh Circuit considered facts similar to those alleged in *Walsh*. *Id.* at 1212. In rejecting PREP Act preemption (or even coverage) of the claim, it noted the distinction between use and non-use of a covered countermeasure:

> [The plaintiff] contends, for example, that the nursing home had too few nurses, permitted nurses to work when they were sick, and failed to isolate residents who showed signs of infection. None of these has anything to do with a "covered countermeasure." Face masks and other personal protective equipment are among the countermeasures defined by the Secretary, but Martin does not allege that face masks led to her mother's death; instead she alleges that the nursing home *failed to use* masks and other protective equipment. This is the opposite of a contention that a covered countermeasure caused harm.

*Id.* at 1213-14. It also expressed skepticism of the HHS's declarations of the breadth of PREP Act immunity to all state law claims relating to COVID-19, calling its reasoning "thin." *Id.* at 1214. The Court further found that the General Counsel's advisory opinions were not authorized by the PREP Act and were not issued after notice and comment rulemaking or in the course of administrative adjudication proceedings. *Id.* As a consequence, the judiciary is not required to defer to the advisory opinions under *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-45 (1984). *Martin*, 37 F.4th at 1214 (citing *United States v. Mead Corp.*, 533 U.S. 218, 229 (2001)).

Based on the foregoing authorities and other district court decisions across the nation, the

8

Court finds that, notwithstanding the General Counsel's advisory opinions, the PREP Act only covers injury caused by *action* in implementing countermeasures, not by *inaction*.

D. Application

In the case at bar, Brown makes allegations in the "utter failure to take countermeasures" vein. He asserts that Dr. Marcowitz failed to do COVID-19 testing, to provide PPE for Jail inmates, and to separate actually or potentially infected inmates from others. This is the kind of inaction not covered by the PREP Act. The Court's conclusion would have been different had Brown alleged injury, say, by a test using a contaminated swab, or by an allergic reaction to a mask, or by a quarantine decision that caused him mental or physical suffering. Those are the kinds of injuries that might have been "caused by, arising out of, relating to, or resulting from the administration to or the use by an individual" of a covered countermeasure. *See* 42 U.S.C. § 247d-6d(a)(1). The injuries Brown alleges were not. Accordingly, based on Brown's allegations in the complaint, Dr. Marcowitz is not entitled to PREP Act immunity.

The Court's conclusion would not change even if it accepted the General Counsel's view that the PREP Act covered deliberate decisions consistent with public health advice to prioritize administering covered countermeasures where countermeasures were scarce and could not be provided to everyone. Dr. Marcowitz would still not be entitled to dismissal for PREP Act immunity because it cannot be reasonably inferred from anything Brown pled in his complaint that Dr. Marcowitz's refusal to test for COVID-19, to provide PPE to inmates, or to implement isolation/quarantine measures was any kind of deliberate decision consistent with public health advice in a program to implement such covered countermeasures. Brown alleges Dr. Marcowitz simply failed to act, which does not even conform with the General Counsel's expansive view of the scope of the PREP Act.

To the extent Dr. Marcowitz relies on Illinois Governor J.B. Pritzker's Executive Order 20-19, granting immunity from certain COVID-19 related claims, such state authority may immunize Dr. Marcowitz from state causes of action, but it cannot have any impact on federal constitutional torts like the ones Brown brings in this case.

To the extent Dr. Marcowitz challenges Brown's pleading of causation and personal involvement, the Court finds it sufficient to allow this case to proceed.  The Court found as much in its order screening this case under 28 U.S.C. § 1915A (Doc. 37), where, as now, a *pro se* plaintiff's pleadings must be liberally construed.  *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### IV.     Conclusion

For the foregoing reasons, the Court **DENIES** Dr. Marcowitz's motion to dismiss (Doc. 101).  The issue of PREP Act immunity having been resolved for the moment, assigned counsel is relieved of the duty to represent Brown and is hereby **TERMINATED** as counsel in this case.

**IT IS SO ORDERED.**
**DATED:  April 5, 2023**

                                                     s/ J. Phil Gilbert
                                                     **J. PHIL GILBERT**
                                                     **DISTRICT JUDGE**